UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JANET E. BOEHM,

      Plaintiff,

v.                                   Case No:   2:14-cv-498-FtM-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## <u>OPINION AND ORDER</u>

This cause is before the Court on Plaintiff, Janet E. Boehm's Second Amended Complaint (Doc. 8) filed on September 4, 2014.   Plaintiff, Janet E. Boehm seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits and supplemental security income.   The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. Plaintiff is proceeding *pro se* which is without the benefit of counsel, therefore Ms. Boehm is held to a less stringent standard than formal pleadings drafted by attorneys and her filings are given a "liberal construction."   *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11 Cir. 2007). For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

## I.   Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.   Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§416(i), 423(d)(1)(A), 1382a(a)(3)(A); 20 C.F.R. §§404.1505, 416.905.   The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy.   42 U.S.C. §§423(d)(2), 1382a(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911.   Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

## B.   Procedural History

On September 13, 2011, Plaintiff filed applications for disability insurance benefits and supplemental security income asserting a disability onset date of September 9, 2010. (Tr. p. 200, 201, 288-298). Plaintiff's applications were denied initially on November 15, 2011 and on reconsideration December 16, 2011. (Tr. p. 201, 202, 221, 222). Two hearings were held before Administrative Law Judge Ronald Robins on March 9, 2012 and August 16, 2012. (Tr. p. 136-180).   The ALJ issued an unfavorable decision on November 29, 2012. (Tr. p. 117-130).   On August 13, 2014, the Appeals Council denied Plaintiff's request for review.   (Tr. p. 1-7). Plaintiff filed a Second Amended Complaint (Doc. 8) in the United States District Court on September 4, 2014.   This case is ripe for review.   The parties consented to proceed before a United States Magistrate Judge for all proceedings.   (See, Doc. 21).

## C.   Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.   *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)[1](citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   An ALJ must

---

1 Unpublished opinions may be cited as persuasive on a particular point.   The Court does not rely on unpublished opinions as precedent.   Citation to unpublished opinions on or after January 1, 2007 is expressly

determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).   The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.   *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through June 30, 2016. (Tr. p. 119). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 9, 2010, the alleged onset date. (Tr. p. 119).   At step two, the ALJ found that Plaintiff suffered from the following severe impairments: osteoarthritis of the cervical and lumbar spine, hypertension, hyperthyroidism with a history of Graves Disease, an anxiety disorder, and a history of benzodiazepine and alcohol abuse. (Tr. p. 119). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. p. 120). At step four, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform medium work, except that she has a moderate limitation in the area of understanding, remembering, and carrying out complex instructions and the ability to make judgments on complex work-related decisions.   (Tr. p. 122). The ALJ defined moderate as more than a slight limitation, but the individual is still able to

---

permitted under Rule 31.1, Fed. R. Ap. P.   Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

function satisfactorily.   (Tr. p. 122, n. 1). The ALJ determined that Plaintiff is capable of performing her past relevant work as an administrative clerk (DOT[2] #219.362-010) and a data entry clerk (DOT #203.582-054) finding that this work does not require the performance of work-related activities precluded by Plaintiffs RFC.   Alternatively, the ALJ continued to step five and determined that based upon Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform such as ticket seller (DOT # 211.467-030), fast food worker (DOT # 311.472-010) and housekeeping cleaner (DOT # 323.687-014).

### D.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971).   The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g).   Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356,

---

2 "DOT" refers to the *Dictionary of Occupational Titles*, (4th ed.).

1358 (11th Cir. 1991).   The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

The Court will liberally construe Plaintiff's Reply to an Answer (Doc. 23) filed on November 25, 2014, and Reply Memorandum of Law Plaintiff's Opposition of the Memorandum to Commissioner's Decision (Doc. 25) filed on January 28, 2015 and consider the Commissioner's Memorandum in Support of the Commissioner's Decision (Doc. 24) filed on January 23, 2015. Plaintiff asserts the following issues:

1) The ALJ erred in failing to determine that she met or equaled one of the Listings for neurological disorders.

2) The ALJ erred in finding that Plaintiff was able to perform her past relevant work or other work in the national economy.

3) The Appeals Council erred in failing to review the new evidence submitted by Plaintiff.

### A.   Whether ALJ erred in failing to find Plaintiff met or equaled one of the Listings

Plaintiff asserts that she met or equaled the following Listings:   11.00 Neurological, 11.01 Category of Impairments Neurological, and 11.02 Epilepsy – Convulsive Epilepsy (grand mal or psychomotor).   The Commissioner asserts that Plaintiff failed to show that her impairments met or equaled any of the Listings for neurological disorders, arguing that her medical evidence concerning a diagnosis of epilepsy occurred after the ALJ's decision.

To meet the requirements of a listing, a plaintiff must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing."   20 C.F.R. § 404.1525(d). The burden is on Plaintiff to show that she meets the Listings. *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).    If an impairment manifests only some of the criteria, then it does not qualify, no matter how severe the impairment.    *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). To meet a Listing, a plaintiff must have a diagnosis included in the Listings, and "must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 1525(a) – (d)).    "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment." *Id*. (citing 20 C.F.R. § 404.1526(a)).

Listing 11.00 provides in part as follows:

A. Epilepsy. In epilepsy, regardless of etiology, degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures. At least one detailed description of a typical seizure is required. Such description includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena. The reporting physician should indicate the extent to which description of seizures reflects his own observations and the source of ancillary information. Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available.

Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy. Determination of blood levels of phenytoin sodium or other antiepileptic drugs may serve to indicate whether the prescribed medication is being taken. When seizures are occurring at the frequency stated in 11.02 or 11.03, evalution of the severity of the impairment must include consideration of the serum drug levels. Should serum drug levels appear therapeutically inadequate, consideration should be given as to whether this is

caused by individual idiosyncrasy in absorption of metabolism of the drug. Blood drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance. When the reported blood drug levels are low, therefore, the information obtained from the treating source should include the physician's statement as to why the levels are low and the results of any relevant diagnostic studies concerning the blood levels. Where adequate seizure control is obtained only with unusually large doses, the possibility of impairment resulting from the side effects of this medication must be also assessed. Where documentation shows that use of alcohol or drugs affects adherence to prescribed therapy or may play a part in the precipitation of seizures, this must also be considered in the overall assessment of impairment level.

20 C.F.R. pt. 404, subpt. P app. 1, 11.00.

Listing 11.01 is entitled Category of Impairments, Neurological, and Listing 11.02 provides as follows:

Epilepsy—convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment. With:

A. Daytime episodes (loss of consciousness and convulsive seizures) or

B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. pt. 404, subpt. P app. 1, 11.01 and 11.02. Plaintiff cites to medical records from November 2013 and January 2014 to show that she was diagnosed with epileptic syndrome. (Tr. p. 730, 731). These records indicate that Plaintiff reported seizures every day, including the day of her visit on January 14, 2014. The ALJ rendered his decision on November 29, 2012, which was at a minimum approximately a year prior to the medical records provided by Plaintiff. These records were submitted to the Appeals Council and were not part of the medical evidence before the ALJ. The ALJ could not have erred in failing to find that Plaintiff met Listings 11.00, 11.01

and 11.02 when the medical records were submitted after the ALJ rendered his decision. Therefore, the ALJ did not err in failing to find that Plaintiff met the Listings.

Plaintiff may also be arguing that the Appeals Council erred in failing to find that Plaintiff met Listings 11.00 through 11.02.   Plaintiff relies on the evidence submitted to the Appeals Council to show that she is disabled.   The Commissioner asserts that the evidence submitted to the Appeals Council was not chronologically relevant to the ALJ's decision. A claimant is generally permitted to present new evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007), and 20 C.F.R. §404.900(b).   Evidence submitted for the first time to the Appeals Counsel is determined under a Sentence Four analysis. *Id*. An Appeals Council must consider new and material evidence that "'relates to the period on or before the date of the administrative law judge hearing decision' and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id*. (20 C.F.R. §§404.970(b), 416.1470(b)).   New evidence is considered material and thereby warranting a remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Id.*

The Appeals Council indicated that it considered the additional medical evidence submitted by Plaintiff.   The medical evidence that supports a diagnosis of epileptic seizures was the medical records from November 2013 and January 2014.   (Tr. p. 730, 731). These medical records do not relate to the period on or before the date the ALJ rendered his decision. Other medical records dated August 22, 2013 indicate a referral to neurology for involuntary muscle contractions, but again these records are dated approximately 9 months after the ALJ's decision and do not relate back to the time on or before the ALJ's decision.   (Tr. p. 688-689).   The ALJ's decision was dated November 29, 2012 and these medical records are at a minimum almost a year after the

ALJ's decision. Plaintiff argues in her Reply Memorandum (Doc. 25) that it was not determined when Plaintiff's epilepsy began to occur. The Court agrees, however, the Court must have medical evidence to support the proposition that Plaintiff was suffering from epilepsy to the extent that her ability to perform work was affected by her disability on or before the date of the ALJ's decision. Plaintiff failed to provide any medical or other evidence that her limitations from epileptic seizures occurred on or before the date of the ALJ's decision or relate to that time period. Therefore, the Court determines that the Appeals Council did not err in denying Plaintiff's request for review as to the issue the Listings.

**B.    Whether the ALJ erred in determining Plaintiff could perform her past relevant work or other work in the national economy**

Plaintiff asserts that she had tingling and numbness in her hands, Grave's disease, B12 deficiency anemia or pernicious anemia and received B12 injections, and a history of drug and alcohol abuse. Plaintiff argues that her B12 deficiency anemia, and a poor immune system prevent her from being able to perform gainful work. The Commissioner responds that a diagnosis of a condition alone is insufficient to show that a claimant is unable to work, and asserts that the ALJ properly considered the objective medical evidence and Plaintiff's daily activities in rendering his decision that Plaintiff was able to perform a range of medium work.

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis*

*v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). The RFC is the most a plaintiff is able to do despite her physical and mental limitations.   20 C.F.R. § 404.1545(a)(1).   In determining whether Plaintiff can return to her past relevant work, the ALJ must determine the Plaintiff's RFC using all of the relevant medical and other evidence in the record.   *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004), 20 C.F.R. §404.1520(e).   An ALJ must consider all of a claimant's mental impairments which are sufficiently severe in combination with all of a claimant's impairments.   *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1256 (M.D. Fla. 2005).

The ALJ carefully reviewed the medical evidence submitted by Plaintiff.   (Tr. p. 124-127). The ALJ found Plaintiff's medical records to be sparse for the period of time at issue in this case. (Tr. p. 124).   The ALJ reviewed the medical records from Plaintiff's September 2010 hospitalization for weakness and instability. (Tr. p. 124). The tests were normal, Plaintiff's thyroid medication was adjusted, her CT scan of her head showed no mass, shift or bleeding, a chest x-ray showed some infiltrate or effusion, but no cardiopulmonary process was present.   (Tr. p. 124). Plaintiff was discharged in stable condition with a diagnosis of generalized weakness and an anxiety reaction.   (Tr. p. 124). In late 2011, Plaintiff showed an elevated cholesterol level and elevated blood pressure, but Plaintiff admitted to not taking her medication.   (Tr. p. 124).

The ALJ reviewed Fatemeh Mousavi, M.D.'s consultative examination in October 2011. (Tr. p. 124).   That ALJ noted that Dr. Mousavi found that plaintiff was in no acute distress, had a normal range of motion in all joints, her joints were stable and non-tender, her strength was 5/5 in both her upper and lower extremities, her cervical spine x-ray showed straightening of the normal cervical lordosis, but was otherwise negative. (Tr. p. 124).

The ALJ reviewed Plaintiff's chest x-ray in 2012 which showed no evidence of pleural disease, and her records from her mid 2012 hospitalization for high blood pressure and swelling

of her body.   (Tr. p. 124).   The doctor noted Plaintiff's hypertension was uncontrolled but also noted that she had failed to take her medication, her chest x-ray was normal, she had edema and the physician increased her thyroid medication because her TSH was elevated. (Tr. p. 124).

The ALJ noted that Plaintiff's course of treatment for her spine was conservative because she did not require surgery on her spine and she did not receive an epidural or steroid injections. (Tr. p. 124). The ALJ also found that Plaintiff did not require the use of any assistive device for ambulation or wear a brace for any extended period.   (Tr. p. 124). The ALJ took into account that the diagnostic evidence of Plaintiff's spine condition was minimal, but he did give her the benefit of the doubt and restricted her to a full range of medium work in the RFC.   (Tr. p. 124).

The ALJ noted that traditionally he gives great deference and weight to the opinion of treating physicians, however in this case, there were no treating physicians so he relied on the findings of fact made by State Agency medical physicians and other consultants regarding Plaintiff's physical and mental capacity to perform work-related functions.   (Tr. p. 126). The ALJ relied on the opinion of the State Agency non-examining physician, Robert Steele, M.D. and gave his opinion great weight.   (Tr. p. 126).   The ALJ found Dr. Steele's opinion to be consistent with the medical evidence as a whole.   (Tr. p. 126-127).   Dr. Steele found that Plaintiff could perform her past relevant work as a Certified Nursing Assistant.   (Tr. p. 209). Dr. Steele determined that Plaintiff could lift and/or carry up to 50 pounds occasionally; lift 25 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; was unlimited in push and pull with hands and/or feet; and had no postural manipulative, visual, communicative, and environmental limitations. (Tr. p. 217).

The ALJ also reviewed the medical records relating to Plaintiff's mental health.   (Tr. p. 124).   The ALJ noted that in September 2010, Plaintiff's physician diagnosed her with anxiety

and prescribed Alprazolam.  (Tr. p. 124).  The ALJ found Plaintiff admitted to a problem with alcohol and driving, and admitted to drinking beer nearly every day.  (Tr. p. 124). The ALJ reviewed the November 2011 hospital records for her complaints of high blood pressure, but noted that after admission, she was diagnosed with alcohol intoxication.  (Tr. p. 124).

The ALJ reviewed the records of the consultative psychological examination performed by Claudia Zsigmond, Psy.D. in November 2011.  (Tr. p. 124). The ALJ noted that Dr. Zsigmond diagnosed Plaintiff with sleep disorder and anxiety secondary to Graves Disease. (Tr. p. 124).

The ALJ reviewed the hospital records from December 2011, when Plaintiff reported to the emergency room requesting a psychological evaluation.  (Tr. p. 125).  The ALJ noted that during the evaluation Plaintiff stated that, "she knew she had to get to the hospital so she could make her (my) case stronger (id. at 3)."  (Tr. p. 125).  The ALJ found that the attending physicians found that Plaintiff had no symptoms that would necessitate hospitalization under the Baker Act.  (Tr. p. 125).  She was diagnosed with alcohol and benzodiazepine dependence.  (Tr. p. 125).  The ALJ found that Plaintiff returned to the emergency room one month later complaining of suicidal ideation.  (Tr. p. 125).  The ALJ noted that after one day of admission, a mental health specialist at the hospital noted that Plaintiff was drug seeking for Xanax and she again did not meet the Baker Act criteria.  (Tr. p. 125).  The ALJ found that the attending physician found Plaintiff to be "fairly manipulative", and that she again hoped to strengthen her disability claim, and was discharged in stable condition. (Tr. p. 125). The ALJ also noted that in an examination one month later, Plaintiff denied any suicidal ideation and her mood and affect, judgment, and thought content were normal.  (Tr. p. 125).  The ALJ reviewed the records of Plaintiff's March 2012 psychiatric evaluation but noted that the physician recommended Celexa and to return for psychotherapy in two weeks.  (Tr. p. 125).

The ALJ reviewed the records from Plaintiff's second consultative psychological examination with Nancy Kelly, Psy.D. in April 2012.  (Tr. p. 125).   Dr. Kelly diagnosed Plaintiff with anxiety disorder.  (Tr. p. 125). Dr. Kelly determined that Plaintiff was able to follow and understand simple directions and perform simple tasks independently.  (Tr. p. 126). The ALJ noted that Dr. Kelly determined that Plaintiff is able to maintain a regular schedule, learn new tasks, but may have moderate difficulties performing complex tasks independently and making appropriate decisions, but could relate adequately with others. (Tr. p. 126). The ALJ gave great weight to Dr. Kelly's opinion finding that her opinion was based on objective medical evidence and consistent with the medical evidence in the record as a whole.   (Tr. p. 126-27).

As with the evidence of her physical impairments, the ALJ found that Plaintiff maintained a conservative course of treatment for her mental health issues.  (Tr. p. 125).   The ALJ noted that Plaintiff was never in the hospital for a prolonged period of time, had no consistent relationship with a mental health specialist, and the ALJ relied on the attending physicians' comments that Plaintiff was manipulative, drug seeking, and attempting to strengthen her disability case by her hospitalizations.  (Tr. p. 125). The ALJ did mention that although her medical records do not support her allegations, he did limit her RFC to performing simple tasks.   (Tr. p. 125).

The Court finds that the ALJ carefully reviewed Plaintiff's medical records relating to her physical and mental complaints in determining Plaintiff's RFC. The medical records supporting Plaintiff's allegations are sparse. The ALJ noted that for both Plaintiff's mental and physical impairments, Plaintiff pursued a conservative course of treatment.   Plaintiff did not assert that the ALJ failed to review any medical records or misconstrued any medical records.   Therefore, the Court finds that the ALJ properly considered Plaintiff's medical records to determine her RFC.

The ALJ also considered Plaintiff's daily activities. (Tr. p. 126).   The ALJ noted that since the alleged onset of her disability, Plaintiff has been able to attend to her personal care needs, watch TV and movies, listen to music, access the internet, prepare and cook meals, clean the house, do the laundry, do the dishes, iron clothes, mow the lawn, and use public transportation.   (Tr. p. 126).   The ALJ also found that Plaintiff went shopping, went to doctor's appointments, and talked on the telephone.   (Tr. p. 126).   The ALJ also noted that Plaintiff was able to pay her own bills and handle funds using her checking account and money orders.   (Tr. p. 126). The ALJ considered Plaintiff's daily activities when determining her RFC.

The Court finds that the ALJ did carefully review the relevant medical evidence and other evidence in this case in reaching his determination that Plaintiff was capable of performing an RFC of medium work except that she has a moderate limitation in the area of understanding, remembering, and carrying out complex instruction and the ability to make judgment on complex work-related decisions.   (Tr. p. 122).   The Court determines that the ALJ did not err in making the RFC determination.

The ALJ found that Plaintiff was able to return to her past relevant work as an administrative clerk (DOT #219.362-010) and a data entry clerk (DOT #203.582-054), and this work does not require work-related activities that would be precluded by Plaintiff's RFC. A plaintiff bears the burden of showing that she can no longer perform her past relevant work as she actually performed it, or as it is performed in the general economy.   *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x. 948, 953 (11th Cir. 2010).[3] (citing *Jackson v. Bowen*, 801 F.2d 1291, 1293-

---

        3 Unpublished opinions may be cited as persuasive on a particular point.   The court does not rely on unpublished opinions as precedent.   Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. Ap. P.   Unpublished opinions may be cited as persuasive authority pursuant to the eleventh Circuit Rules.   11th Cir. R. 36-2.

94 (11th Cir. 1986). Even though a plaintiff has the burden of showing she can no longer perform her past relevant work, the Commissioner has the obligation to develop a full and fair record. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).   To develop a full and fair record, an ALJ must consider all of the duties of that past relevant work and evaluate a plaintiff's ability to perform the past relevant work in spite of the impairments.   *Levie v. Comm'r of Soc. Sec.*, 514 F. App'x. 829, 831 (11th Cir. 2013). SSR 82-62 requires the ALJ to make the "following specific findings of fact: 1. A finding of fact as to the individual's RFC. 2. A finding of fact as to the physical and mental demands of the past job/occupation. 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation."   SSR 82-62, 1982 WL 31386, at *4 (1982).[4] A plaintiff is the primary source for vocational documents, and "statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work."   *Id*. at *3.

The ALJ considered the Plaintiff's testimony as to her position as a clerk.   The ALJ noted that this job required standing and walking for 6 hours per day or less, lifting of no more than 35 pounds, and did not require more than 6 months to maintain proficiency as she did not supervise others or serve as a lead worker.   (Tr. p. 127).   The ALJ also noted that Plaintiff testified that she did not carry out complex instructions or make judgment on complex work-related decisions.   (Tr. p. 127).   The ALJ also obtained the testimony of vocational expert ("VE") Steve Bast.   (Tr. p. 127).   The ALJ noted that the VE found that Plaintiff's jobs as administrative clerk (DOT #219.362-010) and data entry clerk (DOT #203.582-054) as Plaintiff described then and as these

---

4 "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. [citation omitted].   Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference . . ."   *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010).

jobs are described in the <u>Dictionary of Occupational Titles</u> are light and sedentary respectively and semi-skilled. (Tr. p. 127). The VE testified that assuming someone with Plaintiff's RFC, that person would be able to perform both of these jobs, but the occupational base would be eroded by 20%. (Tr. p. 127-128). The ALJ determined that Plaintiff was able to perform her past relevant work as an administrative clerk and a data entry clerk as she actually performed it and as it was generally performed. (Tr. p. 128).[5] The Court finds that the ALJ fully developed the record and considered all of the duties of Plaintiff's past relevant work and evaluated plaintiff's ability to perform the past relevant work in spite of her impairments.   The Court finds that the ALJ did not err in finding that Plaintiff was able to return to her past relevant work as an administrative clerk and a data entry clerk.

### C.   Whether the Appeals Council erred in failing to review the new evidence

Plaintiff relies on evidence she submitted for the first time to the Appeal Council to assert that she is disabled and unable to work.   The Appeals Council looked at the following new evidence: records from Mary Dion, ARNP, dated January 2, 2013 through January 16, 2013; Florida Neurology Group dated July 30, 2013 through August 28, 2013; Lee Memorial Health System dated October 28, 2013; Lee Physician Group dated October 4, 2014 through November 6, 2013; Renaissance Manor dated January 1, 2014; Salus Care, Inc. dated November 12, 2013 through April 23, 2014; and Special Equestrians, Inc. dated May 29, 2014. (Tr. p. 2).   The Appeals Council noted that the new information provided was from a date after the date of the ALJ's

---

5   In the alternative, the ALJ continued to step five of the sequential evaluation and determined that based upon Plaintiff's age, education, work experience and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as ticket seller (DOT #211.467.030), fast food worker (DOT #311.472-010), and housekeeping cleaner (DOT #323.687-014). The Court determined that the ALJ did not err at step four and therefore, will not review the ALJ's step five determinations.

decision which was on November 29, 2012. (Tr. p. 2). The Appeals Council concluded that this new information did not affect the decision about whether Plaintiff was disabled on or before the date of the ALJ's decision of November 29, 2012.   (Tr. p. 2).

As stated above, a claimant is generally permitted to present new evidence at each stage of his administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007), and 20 C.F.R. §404.900(b).   Evidence submitted for the first time to the Appeals Counsel is determined under a Sentence Four analysis. *Id*. An Appeals Council must consider new and material evidence that "'relates to the period on or before the date of the administrative law judge hearing decision' and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id*. (20 C.F.R. §§404.970(b), 416.1470(b)).   New evidence is considered material and thereby warranting a remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Id.*

The Court reviewed the records submitted for the first time to the Appeals Council.   (Tr. p. 10-113). The records from Mary Dion, ARNP dated January 2, 2013, concern Plaintiff requesting an MRI for possible arthritis in her fingers and Ms. Dion suggesting that Plaintiff should make an appointment for a clinical visit. (Tr. p. 108-109). These records do not indicate any relation to a date on or before the ALJ's decision. The records from Florida Neurology Group show treatment from July 30, 2013 through August 28, 2013, but do not indicate that any of the medical problems relate to a time period on or before November 29, 2012.   (Tr. p. 62-81).   The records from Lee Memorial Health System are of a physical therapy referral on October 28, 2013, and do not indicate that the symptoms relate to a time on or before the ALJ's decision.   (Tr. p. 43-50).   The records from Renaissance Manner indicate that Plaintiff had a mental evaluation and

was discharged on January 1, 2014. (Tr. p. 11-18). The records from Renaissance Manner do not indicate that the diagnosis from 2014 relates to the time period on or before the date of the ALJ's decision. The records from SalusCare, Inc. on November 6, 2013, show that Plaintiff went to a neurologist for possible partial sensory seizures and was put on Keppera, but there is no indication that these records relate to the time on or before the ALJ's decision. (Tr. p. 29-33, 54-58). The Special Equestrians, Inc. documentation which is signed by a physician show that Plaintiff has seizures, however, the document is dated May 29, 2014, and shows no indication that it applies to a date on or before November 29, 2012, the date of the ALJ's Decision. (Tr. p. 9).   The Court finds that Plaintiff failed to show that the records submitted to the Appeals Council relate to the period on or before the date of the administrative law judge hearing decision, and therefore, the Appeals Council did not err in denying Plaintiff's request for review.

### IV. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).   The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on June 25, 2015.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties